IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MODOPAYMENTS, LLC,                    )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )   C.A. No. 24-810-GBW
                                      )
VOLVO FINANCIAL SERVICES LLC, A       )
Division of VFS US LLC,               )
                                      )
        Defendant.                    )


**DEFENDANT'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), 35 U.S.C. § 101, AND 17 U.S.C. §§ 101 *et seq.***

OF COUNSEL:
Frank Decosta
Timothy May
Gracie Mills
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated: September 19, 2024

Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorney for Defendant*

i

## Table of Contents

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  NATURE AND STAGE OF THE PLEADING ................................................ 1

III. SUMMARY OF THE ARGUMENT ................................................................ 1

IV.  STATEMENT OF FACTS ................................................................................ 2

    A.   The '805 Patent .................................................................................... 2

    B.   The Asserted Copyright Registrations ................................................ 5

V.   LEGAL STANDARD ....................................................................................... 5

VI.  ARGUMENT ..................................................................................................... 7

    A.   Plaintiff Fails to State a Claim for Relief Under Count I,
        35 U.S.C. § 271(a). ............................................................................. 7

        1.   *Alice* Step One: Claim 1 Is Directed to the Abstract Idea of
            Processing Accounting Data Related to Payment Events. ......... 7

            a.   Claim 1 is directed to the abstract idea of processing
                accounting payment data................................................. 8

            b.   The claimed generic computer components do not save
                claim 1 from abstraction. ............................................... 10

        2.   *Alice* Step 2: The Claims Do Not Contain Any Inventive Concept
            That Transforms the Abstract Idea into Patent-Eligible Subject
            Matter. ...................................................................................... 15

        3.   The Dependent Claims Are Likewise Ineligible..................................... 18

    B.   Plaintiff Fails to Plead Sufficient Facts Under Counts II–V, 17 U.S.C.
        §§ 101 *et seq.* .................................................................................... 18

        1.   Plaintiff Fails to Plead Facts That Defendant Created Derivative
            Works. ...................................................................................... 19

         2.   Plaintiff Fails to Plead Facts That Defendant Distributed Plaintiff's
            Copyrighted Works to the Public............................................ 20

VII. CONCLUSION................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................................................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) .................................................................................. 6

*Arunachalam v. Kronos Inc.*,
No. 14-cv-00091-RGA, 2021 WL 1174530 (D. Del. Mar. 29, 2021) ................................ 2, 14

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ................................................................................... 7

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) ................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 2, 7, 20, 21

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) .................................................................................. 7

*Bilski v. Kappos*,
561 U.S. 593 (2010) .................................................................................................. 6

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .................................................................................. 8

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) .................................................................................. 5

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ................................................................................... 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ............................................................................. 8, 18

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021) ........................................................................... 13, 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ................................................................................ 12

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
748 F.3d 1351 (Fed. Cir. 2014) .................................................................9, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ..............................................6, 11, 15, 17

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .................................................................6, 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ...................................................................................18

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ..................................................................6

*G.A.M.E. Apparel, LLC v. Prisco*,
No. 12-01339, 2012 U.S. Dist. LEXIS 141564 (D.N.J. Oct. 1, 2012) ......................19, 20, 21

*Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) ...................................................................12

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ..................................................................15

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .............................................................15, 16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) .............................................................13, 20

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)......................................................................12

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012) ................................................................................6, 18

*Parker v. Flook*,
437 U.S. 584 (1978)....................................................................................9

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....................................................................10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)...................................................................17

*Redwood Techs., LLC v. Netgear Inc.*,
No. 1:22-cv-01271, 2024 U.S. Dist. LEXIS 113358 (D. Del. Jun. 27, 2024) ..........................1

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..................................................................5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)................................................................15

*Solutran, Inc. v. Elavon, Inc.*,
   931 F.3d 1161 (Fed. Cir. 2019)................................................................14

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)............................................................10, 11

*Tom Hussey Photography, LLC v. BDG Media, Inc.*,
   No. 20-404-MN, 2020 U.S. Dist. LEXIS 238433 (D. Del. Dec. 18, 2020)............................18

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ..........................................................7, 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...........................................................7, 15

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) .................................................................1

**Federal Statutes**

17 U.S.C. § 101......................................................................................19

17 U.S.C. §§ 101 *et seq.*........................................................................18

17 U.S.C. § 106......................................................................................18

17 U.S.C. § 106(2)..................................................................................19

17 U.S.C. § 106(3)..................................................................................20

35 U.S.C. § 101............................................................................. *passim*

35 U.S.C. § 271(a)....................................................................................7

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................1, 15

**Other Authorities**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.11[C][3][a] .......................20

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.09[A][3]
(2024)..................................................................................................................................7

## I.    INTRODUCTION

Defendant Volvo Financial Services LLC respectfully submits this opening brief in support of its motion to partially dismiss Plaintiff ModoPayments LLC's Amended Complaint (D.I. 11) under Federal Rule of Civil Procedure 12(b)(6).[1]

## II.    NATURE AND STAGE OF THE PLEADING

Plaintiff filed its Complaint (D.I. 1) on July 12, 2024, alleging that Defendant infringes the '805 Patent. On August 22, 2024, Plaintiff filed an Amended Complaint (D.I. 11), adding allegations that Defendant infringes certain copyrights owned by Plaintiff. The Court granted an extension of time (D.I. 15) for Defendant to respond to the Amended Complaint by September 19, 2024.

## III.    SUMMARY OF THE ARGUMENT

Regarding Plaintiff's claim for patent infringement, the claims of U.S. Patent No. 11,216,805 are ineligible for patenting under 35 U.S.C. § 101 because they are directed to an abstract idea and fail to recite any inventive concept. Claim 1, the sole independent claim, is directed to processing data related to payment accounting using a computer—something the Supreme Court, the Federal Circuit, and this Court have repeatedly held ineligible. *See, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 224 (2014) (holding ineligible a "claimed method [that] requires the use of a computer to create electronic records [and] track multiple transactions"); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) (holding ineligible a claimed method to "facilitate an economic transaction, for which computers are merely

---

[1] It is Defendant's understanding that the filing of this partial motion to dismiss—which addresses Count I entirely and Counts II-V at least partially—tolls the deadline for answering the remaining aspects of Counts II-V of Plaintiff's Amended Complaint. *See, e.g.*, *Redwood Techs., LLC v. Netgear Inc.*, No. 22-1271, 2024 U.S. Dist. LEXIS 113358 (D. Del. Jun. 27, 2024) (noting Defendant "need not answer the remaining counts of the First Amended Complaint").

used in a conventional way"); *Arunachalam v. Kronos Inc.*, C.A. No. 14-091-RGA, 2021 WL 1174530, *3 (D. Del. Mar. 29, 2021) (holding ineligible a claimed "system of processing payroll transactions using a computer"). Plaintiff has not pled any factual allegations that would support an inventive concept; nor could it, as the '805 Patent identifies no technological problem the claims solve and admits the servers, connectors, and application programming interface used in the claimed payment system are conventional. Accordingly, this Court should dismiss Plaintiff's claim for patent infringement with prejudice.

Regarding Plaintiff's copyright infringement claims, Plaintiff fails to plead *any* facts to support its allegations that Defendant infringed Plaintiff's right to prepare derivative works and right to distribute its copyrighted works to the public. Accordingly, Plaintiff's claims that Defendant infringed Plaintiff's right to prepare derivative works and right to publicly distribute its copyrighted works should be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.    STATEMENT OF FACTS

### A.    The '805 Patent

The '805 Patent is titled "COIN Operated Digital Payments Hub" and describes a "payment event data management system" that "provide[s] a consolidated source of accounting." '805 Patent, Abstract. According to the '805 Patent, "[b]anks, retailers, and other entities in today's economy must be able to accept or facilitate payments from a variety of digital sources and fiat hard currencies," which "means that almost in every payment transaction between a payor and a recipient there can be multiple entities or companies involved in a single purchase." '805 Patent, 1:19–24. "Ensuring that each party is correctly paid or made whole in a timely manner . . . can be difficult to track from an accounting perspective." *Id.*, 1:27–31. The '805 Patent highlights the risks of "fraud or theft" and "mistakes," which can lead to "actuarial complexity,"

"tracking [that] becomes costly," and "derail[ment]" of "consumer choice and convenience." *Id.*, 2:50–56; *see also* Plaintiff's Amended Complaint (D.I. 11) identifying these same "problems").

The solution the '805 Patent proposes is "a method [that] can manage data about payment events." '805 Patent, 2:60–61. "The method can include receiving data about a payment event" that is then "stored in a database in a predetermined structure" called a "COIN." *Id.*, 2:61–67, 3:24–26. The patent defines the "COIN" data structure as encompassing any "identifier that is used to associate together a series of operations into a complete transaction." *Id.*, 6:7–10. In this manner, the COIN "can serve as a transaction ledger, translation hub, [and] transaction server[.]" *Id.*, 6:10–12.

Once the data about a payment event is stored in a COIN, the '805 Patent explains, "the data can be processed[.]" *Id.*, 2:67–3:7. This processing includes "determining [a] number of accounting ledgers involved in the payment event"; "creating . . . transaction accounts"; "determin[ing] a flow path of funds amongst the determined accounting ledgers . . . to complete the payment event"; "making ledger entries"; and "determining whether the one or more transactions accounts balance according to double entry accounting." *Id.*, 2:67–7, 29:26–48. "[A] subset of the data" may be "communicat[ed]" to "external accounts," where a "status of the payment" may be "monitor[ed]" to "initiate notifications[.]" *Id.*, 30:6–14. If a portion of the data is determined to be "sensitive," it may be "encrypt[ed]" before being communicated to the "external accounts." *Id.*, 30:4–7.

Claim 1 recites a system that the '805 Patent describes as using "servers," an "application programming interface," and "connectors" through which "a source payment system associated with a payer" and a "destination payment system associated with the payee" can communicate with the servers. *Id.*, 3:19–46, 29:5–24.

3

Claim 1, the only independent claim, recites:

1. A system for converting data related to payment events into payment status and notifications, the system comprising:

    **one or more servers** operable to receive data about a payment event including one or more of a participant identifying data, one or more financial account numbers, one or more monetary amounts, and a status of the payment within one or more external accounts;

    **a vault comprising the one or more servers**, the vault operable to store said data within a database comprising a predetermined structure comprising a COIN, wherein the COIN serves as an identifier that associates a series of operations into a complete transaction;

    **a COIN application programming interface** operable to communicate with a payer and a payee related to a payment event;

    **a source connector** comprising the one or more servers operable to communicate with a source payment system associated with the payer; and

    **a destination connector** comprising the one or more servers operable to communicate with a destination payment system associated with the payee;

    wherein the one or more servers are operable to:

        determine the number of accounting ledgers involved in the payment event, each accounting ledger associated with one of the one or more external accounts;

        create a COIN account within the COIN for each of the determined accounting ledgers;

        determine a flow path of funds amongst the determined accounting ledgers in order to complete the payment event, wherein the flow path comprises a directed acyclic graph (DAG), the DAG comprising a plurality of vertices and a plurality of edges, with each of the plurality of edges directed from one of the plurality of vertices to another, such that there is no way to start at a vertex and follow a consistently-directed sequence of the plurality of edges that eventually loops back to the vertex;

        access a proof COIN for transferring funds in the flow path, the proof COIN comprising a set of rules for transferring funds between a sender and a recipient;

        use the proof COIN to create the COIN;

        make ledger entries in the one or more COIN accounts from one or more monetary amounts in the data; and

        determine whether the one or more COIN accounts in the COIN balance using double entry accounting;

        maintain a COIN status to reflect a status of the one or more external accounts and each associated ledger entry;

> encrypt a portion of said data if the portion is determined to be sensitive;
>
> communicate at least a subset of the data to at least one of the one or more external accounts, the subset comprising instructions in native semantics to the at least one of the one or more external accounts, the instructions created by the source connector from the set of rules;
>
> monitor an updated status of the payment in the one or more external accounts; and
>
> initiate notifications to the one or more external accounts based on the COIN status.

*Id.*, 29:1–30:14 (emphases added).

### B.     The Asserted Copyright Registrations

Plaintiff alleges that it offers a payment solution called /Checkout, which "captures payment details from customers and payers using a user-facing software application called Modal." (D.I. 11 ¶¶ 13, 44.) Plaintiff alleges that it owns the following copyright registrations for Modal: Reg. Nos. TX0009415681, TX0009415677, TX0009415616, and TX0009415659 (collectively, the "Asserted Copyright Registrations"). (D.I. 11 ¶¶ 46, 47.) Solely for purposes of this Motion, Defendant assumes, without conceding, that Plaintiff is the owner of valid copyrights.

## V.     **LEGAL STANDARD**

Patent eligibility under 35 U.S.C. § 101 "is a question of law" that "may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases).

To determine whether a patent claims an abstract concept, courts engage in the two-step inquiry set forth in *Alice*, 573 U.S. at 217–18. First, courts determine whether the claims at issue are "directed to" an abstract idea. *Id.* at 217. "[S]tep one presents a legal question" only, which "does not require an evaluation of the prior art or facts outside of the intrinsic record." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020). This analysis often begins

"with an examination of eligible and ineligible claims of a similar nature from past cases." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016).

At step one, courts evaluate "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 218. This inquiry has been described as "looking at the 'focus' of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)). "In cases involving software innovations, this inquiry often turns on whether the claims focus on '[a] specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1335–36). While the specification may be "helpful in illuminating what a claim is 'directed to,'" "the specification must always yield to the claim language" when identifying the "true focus of a claim." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (citation omitted).

If the claims are directed to an abstract idea, the inquiry proceeds to step two. At step two, the court determines whether the claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217–22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72–73, 79 (2012)). "Stating an abstract idea 'while adding the words "apply it"' is not enough for patent eligibility. "Nor is limiting the use of an abstract idea 'to a particular technological environment.'" *Id.*, 573 U.S. at 223 (first quoting *Mayo*, 566 U.S. at 72; and then quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Nor can claims simply recite "generic functional language to achieve [the] purported

solutions" without claiming "*how* the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted).

Whether an asserted patent is invalid for failure to satisfy § 101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citations omitted). While the step two inventiveness inquiry may occasionally involve "underlying issues of fact," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), a factual dispute arises only if the claims themselves capture the alleged inventiveness or are directed to an allegedly inventive concept contained in the specification, *id.* at 1369–70.

For copyright infringement claims, a complaint should be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.09[A][3] (2024) (hereinafter "*Nimmer*") (stating *Twombly* standard applies to copyright infringement claims). Under *Twombly*, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. 550 U.S. at 555.

## VI.  **ARGUMENT**

### A.  **Plaintiff Fails to State a Claim for Relief Under Count I, 35 U.S.C. § 271(a).**

#### 1.  *Alice* **Step One: Claim 1 Is Directed to the Abstract Idea of Processing Accounting Data Related to Payment Events.**

To determine whether a claim is directed to an abstract idea at *Alice* step one, courts "evaluate the focus of the claimed advance over the prior art." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citation omitted). Here, the focus of claim 1 and the '805 Patent as a whole is on improving the processing of accounting data related to payment events. As detailed below, this is abstract.

### a.    Claim 1 is directed to the abstract idea of processing accounting payment data.

Claim 1 recites "[a] system for converting data related to payment events into payment status and notifications." '805 Patent, 29:2–4. "[C]onverting" is achieved by "receiv[ing] data about a payment event," "stor[ing]" it, and analyzing it through steps like "determin[ing] the number of accounting ledgers [associated with external accounts] involved in the payment event," "creating a[n] . . . account . . . for each of the determined accounting ledgers," "determin[ing] a flow path of funds amongst the determined accounting ledgers in order to complete the payment event," "transferring funds in the flow path," "mak[ing] ledger entries," and "determin[ing] whether . . . accounts . . . us[e] double entry accounting[.]" *Id.*, 29:5–48. A "status of the one or more external accounts and each associated ledger entry" is "maintain[ed]" and "notifications to the . . . external accounts" are "initiate[d]" based on the status. *Id.*, 30:1–16. These steps involve nothing more than receiving and manipulating data—something courts routinely deem abstract, especially when the data represents financial transactions. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1346–47 (Fed. Cir. 2014) (collecting cases holding ineligible claims directed to the "performance of certain financial transactions"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351–52 (Fed. Cir. 2014) (holding ineligible a claim that recited "receiving" data relating to "an online commercial transaction" and "processing" the received data).

The "COIN"-related steps of claim 1 do not save it from abstraction. The claimed "COIN," "proof COIN," and "COIN account" merely concern digital representations of the payment event data. Indeed, claim 1 recites that the "COIN" is "an identifier that associates a series of operations into a complete transaction," and recites that the "proof COIN" is just "a set of rules for transferring funds between a sender and a recipient[.]" '805 Patent at Claim 1; *see also id.*, 6:7–10, 10:25–27,

29:10–14, 29:41–43. And as to the COIN accounts, claim 1 recites that these simply represent "each of the determined accounting ledgers." *Id.*, 6:14–17, 29:29–30. "[C]reat[ing]," "access[ing]," and "us[ing]" these digital representations of the payment event data are thus nothing more than processing that payment data in an accounting system.

Likewise, claim 1 is no less abstract because the "flow path of funds" is recited to "comprise[] a directed acyclic graph (DAG)." *Id.*, 29:31–40. A DAG is just a graph—a mathematical concept. Claim 1 recites that this "graph" comprises "a plurality of vertices and a plurality of edges, with each of the plurality of edges directed from one of the plurality of vertices to another, such that there is no way to start at a vertex and follow a consistently-directed sequence of the plurality of edges that eventually loops back to the vertex." *Id.*, 29:31–40. But, again, this is just representing payment accounting transaction flow in a graph. And the specification discloses that this graph is "generate[d]" by an "algorithm," such as by "modify[ing] a well-known topological ordering algorithm." *Id.*, 23:19–23. Claim 1 makes that mere ordering explicit, reciting that the DAG "determine[s] a flow path of funds amongst the determined accounting ledgers in order to complete the payment event." *Id.*, 29:31–40. Thus, at best, this graph merely reflects a mathematical concept used to represent or order accounting data.

As the Federal Circuit explained in *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, "a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) (holding ineligible claims reciting "a process of organizing information through mathematical correlations"); *see also, e.g.*, *Parker v. Flook*, 437 U.S. 584, 595 (1978) ("If a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." (internal quotations omitted)). Thus, the

"graph" step of claim 1 amounts to a mere ordered representation of abstract accounting data.

Thus, all of the recited steps confirm that claim 1 is directed to the abstract idea of processing accounting data related to a payment. Indeed, each step of claim 1 parallels a process that could be performed by a human being mentally or with a pencil and paper, a "telltale sign of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021). For example, the '805 Patent admits that a "company" is capable of "receiv[ing]" and "stor[ing]" payment data, such as "card information." '805 Patent, 1:51–57. Such a company can "communicate" that data "to get the money from the consumer's bank and to make sure that it arrives at the merchant's operating account at their bank." *Id.*, 1:51–55. And the company can manipulate that data to monitor a status, such as by deciding "it's okay for the consumer to be making the purchase" and reserving "the amount of the purchase in the account of the consumer so it cannot be used for another purpose for a debit card." *Id.*, 1:63–2:6. As in *Digitech*, the claimed steps boil down to "taking existing information" and "organizing this information into a new form." 758 F.3d at 1351. This process of taking accounting data to make a payment is abstract.

### b. The claimed generic computer components do not save claim 1 from abstraction.

The components recited in claim 1—"one or more servers," "a vault comprising the one or more servers," "a COIN application programming interface," "a source connector," and a "destination connector"—do not make claim 1 any less abstract. As the Federal Circuit has explained, "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Rather, where "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea," the claim remains abstract. *Id.*

In *TLI*, for example, the claims recited "concrete, tangible components such as 'a telephone unit' and 'a server,'" but "[t]he specification fail[ed] to provide any technical details for the[se] tangible components." *Id.* at 611–12. "[I]nstead," the court stated, the specification "predominately describe[d] the system and methods in purely functional terms." *Id.* at 612. This, the court concluded, indicated "the focus of the patentee and of the claims was not on an improved telephone unit or an improved server," but rather an abstract idea. *Id.* at 612–13. The same is true here.

The "one or more servers" and "vault," for example, are described in a purely functional way. The '805 Patent states what the servers and vault are "operable to," "may," and "can" do. *See, e.g.*, '805 Patent at Abstract, 3:19–26, 3:31–38, 7:20–22, 7:37–41, 9:53–59, 10:59–62. The same is true for the "COIN application programming interface." The '805 Patent states what it is "operable to" or "may" do and explains that "requests" go "through" or "via" it. *See, e.g., id.*, 3:26–28, 6:44–50, 7:37–39, 9:41–45, 26:39–40, 28:34–38. The "source" and "destination connector[s]" are no different. *See, e.g., id.*, 3:28–31, 3:51–59, 7:41–47, 7:58–63, 11:15–23, 11:28–32, 11:48–12:12, 12:28–32. This "fail[ure] to provide any technical details" for the claimed components makes clear that, as in *TLI*, these components are "merely a conduit for the abstract idea." 823 F.3d at 612; *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person . . . could not."). Put differently, claim 1 recites only "the essentially result-focused, functional . . . claim language" that is "a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer . . . technology to carry out economic transactions." *Elec. Power*, 830 F.3d 1350 at 1356.

Finally, nothing in the '805 Patent suggests any "improvement in the functioning of a computer." *Enfish*, 822 F.3d at 1338. Rather, the problem the '805 Patent purports to solve is a problem with making a payment. In the '805 Patent's own words, "almost in every payment transaction between a payor and a recipient there can be multiple entities or companies involved in a single purchase[.]" '805 Patent, 2:21–24. These entities "move money . . . in different ways," *e.g.*, "[s]ome of them might think in integer pennies, while others think in decimal dollars." *Id.*, 2:41–46. As a result, "[e]nsuring that each party is correctly paid or made whole in a timely manner . . . can be difficult to track from an accounting perspective." *Id.*, 1:27–31.

The '805 Patent highlights the known risks of typical "fraud or theft" and "mistakes." *Id.*, 2:50–56. The patent explains that these can lead to "actuarial complexity," "tracking [that] becomes costly," and "derail[ment]" of "consumer choice and convenience." *Id.* "It is therefore difficult," the patent also explains, "to engage new, different, and varied payment systems globally, even when it makes business sense to do so." *Id.*, 5:52–54; *see also* Ex. A, Prosecution History of U.S. Patent No. 11,216,805, at 129–30 (characterizing the claims as "help[ing] a payment system to run more efficiently and allow the parties to interact with a greater variety of consumers and merchants . . . so that merchants, consumers and other involved parties do not have to independently keep track of native semantics, protocol, and other factors unique to each party's proprietary system.")[2] None of these problems is one "specifically arising in the realm of computer[s]," and the '805 Patent is devoid of any "specific improvement in the way computers operate." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014); *Enfish*, 822 F.3d at 1336. Thus, the claim remains abstract, because "[a]n improved result, without

---

[2] The Court may consider the prosecution history of the patent in suit as a public record. *Hockerson–Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000); *see also generally Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea."

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019).

Time and again, the Supreme Court, the Federal Circuit, and this Court have held claims for processing financial data are abstract. *Alice* itself considered "claims involv[ing] a method of exchanging financial obligations between two parties" known as "intermediated settlement." 573 U.S. at 219. There, as here, "the claimed method require[d] the user of a computer to create electronic records [and] track multiple transactions[.]" *Id.* at 224. The Supreme Court held this was abstract. As the Court explained, the claimed method amounted to "a fundamental economic practice" that was "a building block of the modern economy." *Id.* at 219–20. This "longstanding commercial practice," the Court explained, "is a method of organizing human activity" and "squarely within the realm of 'abstract ideas[.]'" *Id.* at 220. Because this sort of "electronic recordkeeping" is "one of the most basic functions of a computer," the Court held, "each step" of the claimed method "does no more than require a generic computer to perform generic computer functions." *Id.* at 225.

The same is true here. Claim 1 recites generic components ("servers," an "application programming interface," and "connectors") that, like the claims in *Alice*, perform "electronic recordkeeping" using "generic computer functions." The purported advance—"[e]nsuring that each party is correctly paid or made whole in a timely manner"—is likewise a fundamental economic practice essential to the modern economy. '805 Patent, 1:27–31; *see also cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1376–77 (Fed. Cir. 2021) (holding abstract a claim directed to "facilitating . . . a commercial transaction" because "[h]umans have long intermediated these very transactions by collecting and relaying the very same information."). Thus claim 1, like the claim in *Alice*, is abstract.

Another similar case is *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019). There, the Federal Circuit considered "a system and method for processing paper checks." *Id.* at 1163. Similar to the claims here, which "receive data about a payment event" and "create" a digital representation called a "COIN account," the claims in *Solutran* recited "receiving a data file" that reflected "a transaction" and "creating digital images" representing the transaction. *Compare* '805 Patent, 29:5–30; *Solutran*, 931 F.3d at 1164. The *Solutran* Court held the claims were abstract. *Solutran*, 931 F.3d at 1166–67. The Court highlighted that, while the claims responded to "an industry transition to the electronic processing of checks," the problem the claims purported to address—"[t]he desire to credit a merchant's account as soon as possible"—was a "long-standing commercial practice." *Id.* Here, too, the '805 Patent laments that "the payments industry has seen an explosion of new entrants," resulting in increased "complexity." '805 Patent, 1:19–31, 5:47–51. But this is a problem "from an accounting perspective." *Id.* Like *Solutran*'s claim, claim 1 is abstract.

Lastly, this Court's decision in *Arunachalam* is also illustrative. 2021 WL 1174530 (D. Del. Mar. 29, 2021). There, this Court held "a claim to a system of processing payroll transactions using a computer" was "directed to the abstract idea [of] performing real-time transactions over a network for payroll processing" because it recited only "basic computer functions" to carry out the abstract idea. *Id.* at *2. "The fact that computer implementation may increase the speed or efficiency of the payroll processing is irrelevant," this Court explained. *Id.* So too claim 1 recites only basic computer functions like "receiv[ing]" data, "determin[ing]" financial information from the data, and "communicat[ing]" data that carry out the abstract idea of processing accounting data related to payment. '805 Patent, 29:1–30:14. Any increased efficiency in processing this data using a conventional computer does not save it from abstraction.

14

At bottom, the '805 Patent is—to use its own words—"directed [to] payment processing." *Id.*, 1:13–15. Thus, at *Alice* step one, this Court should hold claim 1 is abstract.

### 2. *Alice* Step 2: The Claims Do Not Contain Any Inventive Concept That Transforms the Abstract Idea into Patent-Eligible Subject Matter.

Claim 1 of the '805 Patent also lacks an inventive concept. The claim recites only "generic functional language to achieve the[] purported solution[]," and "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Two-Way Media*, 874 F.3d at 1339; *Elec. Power Grp.*, 830 F.3d at 1355; *see also Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (finding claims lacking "specific or limiting recitation of . . . improved computer technology" ineligible at *Alice* step two (citation omitted)). As explained above, the components in claim 1— "one or more servers," "a vault comprising the one or more servers," "a COIN application programming interface," "a source connector," and a "destination connector"—are recited and described purely in terms of the functions they perform, with no suggestion that they are somehow inventive.

Plaintiff's Amended Complaint alleges that each of "a COIN application programming interface to connect a payer with payee" and "a directed acyclic graph ('DAG') that determines the flow path of funds" amounts to "innovative management of payment data using technological solutions." (D.I. 11 ¶ 34.) But Plaintiff offers no support for these bare statements. A "district court need not accept a patent owner's conclusory allegations of inventiveness." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022); *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Trinity*, 72 F.4th at 1365–66 (noting, in affirming a district court's grant of a Rule 12(b)(6) motion alleging ineligibility under § 101, that

"conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept").

In any case, the '805 Patent admits that application programming interfaces were known. The '805 Patent explains, for example, that "external system[s]" have "their own . . . APIs" and even provides the existing example of a "Stripe™ API." '805 Patent, 8:30–33, 10:59–62; *see also id.*, 15:44–46 (describing "third party APIs"), Fig. 1A (illustrating "API[s]" at each "Pay Service"); *see also cxLoyalty*, 986 F.3d at 1377 (holding a claim ineligible at *Alice* step two because "communication of information by GUIs" was "well-known in the prior art" (citation omitted)). Plaintiff does not allege, and the '805 Patent does not indicate, that there is anything about the "COIN application programming interface" that is distinct from these known APIs. The claim merely requires that the COIN application programming interface be "operable to communicate with a payer and a payee related to a payment event"—something the '805 Patent admits existing APIs could do. '805 Patent, 2:6–18 (explaining that existing networks such as "Visa™, MasterCard™, American Express™ or a similar network . . . define and standardize the end to end communication protocols used by the merchant acquirer all the way to the consumer's bank"), 29:16–18; *Intell. Ventures*, 838 F.3d at 1322 (stating any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification"). Likewise, the specification states only that "a user (payer or payee)" can "interact with" the servers "via an application programming interface such as [a] COIN API . . . or vault API . . . ." '805 Patent, 7:37–39. The COIN does not render this innovative, as it is nothing more than an "identifier that is used to associate together a series of operations into a complete transaction." *Id.*, 6:7–10.

The "directed acyclic graph ('DAG') that determines the flow path of funds" cannot be an inventive concept because it is itself abstract. As explained above, a DAG is a graph—a

mathematical concept. As claim 1 recites, "the DAG compris[es] a plurality of vertices and a plurality of edges," somehow arranged "such that there is no way to start at a vertex and follow a consistently-directed sequence of the plurality of edges that eventually loops back to the vertex." *Id.*, 29:31–40. The specification confirms that this graph is generated by an "algorithm" similar to "a well-known topological ordering algorithm." *Id.*, 23:19–23. But "[a] claim directed to an abstract idea does not automatically become eligible merely by adding a mathematical formula." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017). Regardless of whether it is "innovative," as Plaintiff contends,[3] the use of a DAG to determine the flow path "simply changes the data into other forms of data" and "cannot save" the claim. *Id.*; *see also id.* at 1327 ("Adding one abstract idea (math) to another abstract idea . . . does not render the claim non-abstract."). The DAG in the claim is just used to change one form of data representation into another using a graph—a mathematical concept.

The Federal Circuit has advised that a "helpful way of double-checking" whether *Alice*'s two-step framework has been correctly applied is to "invok[e] an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them." *Elec. Power*, 830 F.3d at 1356. Claim 1 here recites only ends, results, and functions: it aims to "convert[] data related to payment events into payment status and notifications," and it does so merely by processing the payment event data using admittedly conventional servers. Claim 1 is thus not patent eligible under § 101.

---

[3] *Compare* '805 Patent, 22:66–23:4 (defining a DAG), *with*, *e.g.*, Ex. A at 190 (citing U.S. Patent Publication No. 2007/0038560); Ex. B, U.S. Patent Publication No. 2007/0038560, at ¶¶ [0030] ("FIG. 16 is a block diagram of illustrative directed acyclic graphs for use in card and account linkages"), [01015]-[0107], Figure 16.

### 3. The Dependent Claims Are Likewise Ineligible.

The dependent claims of the '805 Patent recite only minor additional details that do not alter claim 1's focus on the abstract idea of processing accounting data related to payment events. These claims recite, for example, additional details about "the COIN status" (claims 2, 8); the "portion of . . . data" that is "encrypt[ed]" (claim 3); and the "participant identifying data" and "financial account numbers" included in the "data about [the] payment event" (claims 4–7). None of these additional details adds "significantly more" to the abstract idea—something "inventive"— that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217–22 (quoting *Mayo*, 566 U.S. at 66, 72–73, 79). There is no need to analyze every claim where, as here, "all the claims are 'substantially similar and linked to the same abstract idea.'" *Content Extraction*, 776 F.3d at 1348 (citation omitted).

### B. Plaintiff Fails to Plead Sufficient Facts Under Counts II–V, 17 U.S.C. §§ 101 *et seq.*

A copyright is best described as a bundle of exclusive rights, which includes separate rights to reproduce the copyrighted work (*i.e.*, make copies), to prepare derivative works, and to distribute the copyrighted work to the public. 17 U.S.C. § 106. To state a claim for copyright infringement, Plaintiff must allege (1) ownership of a valid copyright, and (2) Defendant's unauthorized copying of original elements of Plaintiff's work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Unauthorized copying" refers generally to prohibited acts that constitute a violation of at least one exclusive right granted to copyright holders. *See Tom Hussey Photography, LLC v. BDG Media, Inc.*, No. 20-404-MN, 2020 U.S. Dist. LEXIS 238433, at *4 (D. Del. Dec. 18, 2020); 17 U.S.C. § 106.

Plaintiff alleges that Defendant directly infringed Plaintiff's exclusive right to reproduction, right to prepare derivative works, and right of public distribution. (D.I. 11 ¶¶ 73, 75, 81, 83, 89, 91, 97, 99.) But Plaintiff's sparse factual allegations relate only to alleged violations of

Plaintiff's right of reproduction: Defendant "*copied a substantial portion* of the Modal software application each time it used /Checkout between October 2022 and July 2023," and "[w]henever [Defendant] accessed [Plaintiff's] copyrighted source code (*e.g.*, by running its implementation of /Checkout, *copying the associated files onto [Defendant]-related computers* or by opening these files via code editing software), it *made an unlicensed copy* of that copyrighted source code."[4] (D.I. 11 ¶¶ 58, 72, 80, 88, 96) (emphases added). To survive a motion to dismiss, each theory of liability "requires proof of an underlying act of copyright infringement." *G.A.M.E. Apparel, LLC v. Prisco*, C.A. No. 12-1339, 2012 U.S. Dist. LEXIS 141564, at *8-9 (D.N.J. Oct. 1, 2012).

### 1.    Plaintiff Fails to Plead Facts That Defendant Created Derivative Works.

The Copyright Act grants a copyright owner the exclusive right to "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). A "derivative work" is "a work *based upon one or more preexisting works*, such as a translation, musical arrangement, dramatization, fictionalization, . . . or any other form in which a work may be *recast, transformed, or adapted*." 17 U.S.C. § 101 (emphases added).

For each Asserted Copyright Registration, Plaintiff alleges that Defendant infringed Plaintiff's "right to prepare derivative works." (D.I. 11 ¶¶ 73, 75, 81, 83, 89, 91, 97, 99.) Plaintiff fails to allege *any* facts, however, that Defendant created works based on Plaintiff's copyrighted works or modified Plaintiff's copyrighted works so as to "recast," "transform[]," or "adapt[]" them. Instead, Plaintiff makes conclusory statements that Defendant infringed Plaintiff's right to prepare derivative works without alleging any specific facts to substantiate these claims. As these allegations constitute mere "conclusions," Plaintiff's claims that Defendant infringed Plaintiff's

---

[4] While this Motion does not seek to dismiss claims that Defendant violated Plaintiff's right of reproduction at this time, Defendant does not concede, in any way, that Defendant violated Plaintiff's right of reproduction.

right to prepare derivative works should be dismissed. *Twombly*, 550 U.S. at 555; *G.A.M.E. Apparel*, 2012 U.S. Dist. LEXIS 141564, at *8-9.

### 2. Plaintiff Fails to Plead Facts That Defendant Distributed Plaintiff's Copyrighted Works to the Public.

The Copyright Act grants a copyright owner the exclusive right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). The Copyright Act does not define "distribution," but courts have held that a copyright owner must show either an actual act of dissemination of copyrighted content to the public or an offer to do so to prove violation of the public distribution right. *See, e.g.*, *Nimmer* § 8.11[C][3][a].

For each Asserted Copyright Registration, Plaintiff alleges that Defendant infringed Plaintiff's exclusive right to distribute its copyrighted works to the public. (D.I. 11 ¶¶ 75, 83, 91, 99.) Plaintiff fails to allege *any* facts—much less "enough facts"—that Defendant disseminated Plaintiff's copyrighted works to the public or offered to do so. *Twombly*, 550 U.S. at 570. As the claims that Defendant infringed Plaintiff's right to publicly distribute the copyrighted works constitute mere "conclusions," they should be dismissed. *Id.* at 555; *G.A.M.E. Apparel*, 2012 U.S. Dist. LEXIS 141564, at *8-9.

## VII.   CONCLUSION

Plaintiff's patent infringement claims (Count I) fail to state a claim for relief because the '805 Patent is ineligible under 35 U.S.C. § 101. Plaintiff's copyright infringement claims (Counts II–V) that Defendant infringed Plaintiff's right to prepare derivative works and right to publicly distribute its copyrighted works lack sufficient facts to state a claim for relief. Accordingly, Defendant requests that its motion to dismiss be granted without leave to amend.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorney for Defendant*

OF COUNSEL:
Frank Decosta
Timothy May
Gracie Mills
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated: September 19, 2024

21