IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MODOPAYMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 24-810-GBW |
| VOLVO FINANCIAL SERVICES LLC, A Division of VFS US LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), <u>35 U.S.C. § 101 AND 17 U.S.C. §§ 101 *et seq.*</u>**

OF COUNSEL:
Frank Decosta
Timothy May
Gracie Mills
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant*

Dated: October 31, 2024

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Plaintiff Fails to State a Claim for Relief Under Count I,
       35 U.S.C. § 271(a). ............................................................................................. 1

       1. *Alice* Step One: The Claims Are Directed to the Abstract Idea of
          Processing Accounting Data Related to Payment Events. ....................... 1

          a. The claims do not address a technological problem. ..................... 2

          b. The claims do not recite a technological solution. ......................... 3

          c. Defendant did not oversimply the claims. ..................................... 7

       2. *Alice* Step 2: The Claims Do Not Contain Any Inventive Concept
          That Transforms the Abstract Idea into Patent-Eligible Subject
          Matter. ........................................................................................................ 7

       3. Resolution of the Claims' Eligibility at the Motion to Dismiss
          Stage Is Appropriate. ................................................................................ 9

    B. Plaintiff Fails to Plead Sufficient Facts Under Counts II-V, 17 U.S.C.
       §§ 101 *et seq.* ...................................................................................................... 9

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ......................................................................................................... 6, 7

*Ancora Technologies, Inc. v. HTC America, Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ....................................................................................... 4, 5

*Arunachalam v. Kronos Inc.*,
  No. 14-CV-00091-RGA, 2021 WL 1174530 (D. Del. Mar. 29, 2021) .................................. 7

*BASCOM Global Internet Services v. AT&T Mobility LLC*,
  827 F.3d at 1350 ............................................................................................................. 8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 1, 10

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................................................ 9

*BSG Tech LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................ 9

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ............................................................................................ 7

*Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*,
  50 F.4th 127 (Fed. Cir. 2022) ............................................................................................... 8

*CosmoKey Solutions GmbH & Co. KG v. Duo Securities*,
  15 F.4th 1091 (Fed. Cir. 2021) ............................................................................................. 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ........................................................................................ 2, 3

*Digitech Image Technologies LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed Cir. 2014) ............................................................................................. 6

*Enfish LLC v. Microsoft Corporation*,
  822 F.3d 1327 (Fed. Cir. 2016) ....................................................................................... 4, 5

*G.A.M.E. Apparel, LLC v. Prisco*,
  C.A. No. 12-1339, 2012 U.S. Dist. LEXIS 141564 (D.N.J. Oct. 1, 2012) .......................... 10

*Inmar Brand Solutions, Inc. v. Quotient Technology Inc.*,
    No. CV 23-994, 2024 WL 1675036 (D. Del. Apr. 18, 2024) ................................................... 6

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) ............................................................................................... 4

*PersonalWeb Technologies LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ................................................................................................. 6

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ............................................................................................... 6

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) ............................................................................................... 7

*Trinity Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ........................................................................................... 5, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ........................................................................................... 3, 8

**Federal Statutes**

17 U.S.C. § 101 ............................................................................................................................. 9

17 U.S.C. § 106 ............................................................................................................................. 9

17 U.S.C. § 501 ......................................................................................................................... 1, 9

35 U.S.C. § 101 ............................................................................................................................. 5

35 U.S.C. § 271(a) ........................................................................................................................ 1

**Other Authorities**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.05[A] (2024) .................... 10

**I.      INTRODUCTION**

Regarding Plaintiff's patent infringement claims, Plaintiff fails to establish patent eligibility under the *Alice* framework. The claims are directed to the abstract idea of processing accounting data related to payments events, and Plaintiff cannot point to any inventive concept in the claims.

Regarding Plaintiff's copyright infringement claims, violations of the right to prepare derivative works and the right of public distribution are *separate legal bases* of direct copyright infringement, each requiring factual support. *See* 17 U.S.C. § 501. As Plaintiff itself asserts, "[Plaintiff's] copyright infringement claims (Counts II-V) do not state that [Defendant] prepared derivative works or publicly distributed its copyrighted works." Plaintiff's Opposition (Dkt. 19) ("Opp.") at 20. Plaintiff's admission is precisely the point: because Plaintiff fails to plead *any* facts to support allegations that Defendant violated its rights to prepare derivative works and to public distribution, those claims should be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**II.     ARGUMENT**

    **A.     Plaintiff Fails to State a Claim for Relief Under Count I, 35 U.S.C. § 271(a).**

        **1.     *Alice* Step One: The Claims Are Directed to the Abstract Idea of Processing Accounting Data Related to Payment Events.**

The '805 Patent's claims are not, as Plaintiff contends, directed "to a technological problem," nor do they recite "a technological solution." Opp. at 8. Rather, the claims are directed to processing accounting data for payment events. *See* Defendant's Opening Brief (Dkt. 17) ("Op. Br."). This is not an "oversimplification" of the claims, as Plaintiff alleges. Opp. at 11. On the contrary, it mirrors the '805 Patent's own acknowledgement that the claims are "directed [to] payment processing." '805 Patent, 1:13-15.

### a.   The claims do not address a technological problem.

The parties actually agree on the problems the '805 Patent purports to address. Plaintiff, like Defendant, highlights that "[b]anks, retailers, and other entities in today's economy must be able to accept or facilitate payments from a variety of digital sources and fiat hard currencies." *Compare* Opp. at 8 (quoting '805 Patent, 1:19-22) *with* Op. Br. at 2 (same). And Plaintiff, like Defendant, cites the patent's mentions of "fraud or theft" and "mistakes," which can lead to "actuarial complexity," "tracking [that] becomes costly," and limits on "consumer choice and convenience." *Compare* Opp. at 4 (citing '805 Patent, 2:50-56), 8-9 (same) *with* Op. Br. at 2-3 (same), 12; *see also* Plaintiff's Amended Complaint (D.I. 11) identifying these same "problems"). Plaintiff contends these problems are "technological" ones. They are not.

Rather, these are problems that exist in any payment event, whether it involves "mobile payments" and "tokenization" or simply banks with different accounting systems. As the '805 Patent explains, "almost in every payment transaction between a payor and a recipient there can be multiple entities or companies involved in a single purchase." '805 Patent, 2:21-24. These entities "move money . . . in different ways," e.g., "[s]ome of them might think in integer pennies, while others think in decimal dollars." *Id.*, 2:41-46. While Plaintiff highlights the "differences in syntax, semantics, state or workflows that may exist between" electronic payment systems, these differences are but another example of the "different ways" in which banks and other payment entities have always "move[d] money." *Id.*; Opp. at 8.

For this reason, Plaintiff's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.* is unavailing. Opp. at 9 (citing 773 F.3d 1245 (Fed. Cir. 2014)). In *DDR Holdings*, the patent recognized a problem that arose when links to a third-party merchant's webpage were displayed on a host webpage: when a user clicked on the merchant's link, the user "would be taken to the third-party merchant's website" and, in effect, "lur[ed] … away" from the host webpage.

2

*DDR*, 773 F.3d at 1248-49. The claims recited a solution: generating a new webpage that, while allowing a user to purchase the merchant's product, retained "visually perceptible elements" that recreated the "look and feel" of the host website. *Id.* at 1249. The Federal Circuit explained that the claims were patent-eligible because this problem had no "pre-Internet analog." *Id.* at 1258; *see also id.* at 1257 ("a problem specifically arising in the realm of computer networks."). If "a customer enters a physical warehouse store," the Court explained, and "encounter[s] a kiosk selling third-party [products]," "[t]here is … no possibility that by walking up to this kiosk, the customer will be suddenly and completely transported outside the warehouse store and relocated to a separate physical venue associated with the third-party—the analog of what ordinarily occurs in 'cyberspace' after the simple click of a hyperlink[.]" *Id.* Here, by contrast, the "different account systems, techniques, and protocols" that the '805 Patent seeks to address have a clear pre-Internet analog: the different account systems, techniques, and protocols that long existed among banks and other payment entities way before the '805 Patent.

        **b.**     **The claims do not recite a technological solution.**

According to Plaintiff, the '805 Patent's claims are directed to a technological solution: "facilitating secure and efficient payment flows between multiple disparate payments systems without needing to understand the complexities of the differences in syntax, semantics, state or workflows that may exist between those systems[.]" Opp. at 8. But this alleged solution, however "technological," does not appear in the claims.

While the claims recite the "servers, APIs … 'connectors' … and COIN" that Plaintiff points to, each is recited in "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted). The COIN, for example, which Plaintiff touts as "manag[ing] the full lifecycle of the underlying payments transactions"

3

and "enabl[ing] 'highly automated process mapping,'" Opp. at 9 (quoting '805 Patent, 7:64-8:5), is recited in claim 1 merely as "an identifier that associates a series of operations into a complete transaction." '805 Patent, 29:10-14.

To the extent "[c]onnecting new digital payments experiences to existing payments systems is highly complex … technically," Opp. at 9 (quoting '805 Patent, 5:61-66), the claims lack any specifics regarding how this technological complexity is achieved. For example, the claims recite that "instructions in native semantics" are "created by the source connector from [a] set of rules." '805 Patent, 30:8-11. But the claims say nothing of *what* those rules are or *how* the instructions are created. "An improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019).

Plaintiff's reliance on *Ancora Technologies, Inc. v. HTC America, Inc.* is misplaced. Opp. at 10 (citing 908 F.3d 1343 (Fed. Cir. 2018)). Plaintiff asserts that the claims here are eligible because, like the claims in *Ancora*, they "improved the way that computers operated and handled data" and "allowed more efficient data processing." Opp. at 10 (citing *Ancora*, 908 F.3d at 1344, 1347). As an initial matter, it was the claims in *Enfish LLC v. Microsoft Corporation*—not *Ancora*—that "improved the way that computers operated and handled data," and neither *Enfish* nor *Ancora* held claims eligible for "allow[ing] more efficient data processing." *Ancora*, 908 F.3d at 1347 (discussing *Enfish*, 822 F.3d 1327, 1333, 1336 (Fed. Cir. 2016)). Regardless, neither *Enfish* nor *Ancora* is applicable here.

*Enfish* distinguished between claims that focus on a "specific asserted improvement in computer capabilities" and those that focus on an abstract process "for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. The claims in *Enfish* were the former because

4

they recited "a specific type of data structure"—a "self-referential table"—that was "designed to improve the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1339. The claims here are the latter: the claims are devoid of any "specific asserted improvement in computer capabilities." Indeed, even the "COIN API" and "connectors" that facilitate the so-called "bi-directional system" Plaintiff points to, Opp. at 11, are recited purely functionally in the claims. '805 Patent, 29:16-24 ("a COIN application … *operable to* communicate with a payer and a payee related to a payment event" and "connector[s] … *operable to* communicate with a … payment system"). And while Plaintiff disputes that "the COIN is merely an 'identifier,'" Opp. at 12, this is, in fact, all the claim says. '805 Patent, 29:10-14 ("a predetermined structure comprising a COIN, wherein the COIN serves as an identifier that associates a series of operations into a complete transaction[.]") The "predetermined data structure" of the COIN is unspecified—nothing like the "specific type of data structure" found eligible in *Enfish*.[1]

*Ancora* is similar to *Enfish*. There, the claims were deemed eligible because they "specifically identifie[d]" a "non-abstract computer-functionality improvement": "a structure containing a license record is stored in a particular, modifiable, non-volatile portion of the computer's BIOS [Basic Input Output System], and the structure in that memory location is used for verification by interacting with the distinct computer memory that contains the program to be verified." *Ancora*, 908 F.3d at 1348-49. There is no comparably "specific[]" "computer-functionality improvement" here. Indeed, the claims recite components that are simply "operable

---

[1] In *Enfish*, the district court had construed the claimed "means for configuring" as requiring a four-step algorithm including the "self-referential table[.]" 822 F.3d at 1336-38. Here, Modo has not argued that any terms require construction. *See, e.g.*, *Trinity Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-61 (Fed. Cir. 2023) (claim construction is not required to resolve eligibility on a motion to dismiss unless the patentee "propose[s] a specific claim construction … and explain[s] why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes").

to" effect results. So, unlike the claims in *Enfish* and *Ancora*, Plaintiff's claims lack "the specificity required to transform [them] from one[s] claiming only a result to one[s] claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

*Inmar Brand Solutions, Inc. v. Quotient Technology Inc.*, which Plaintiff also cites, is likewise inapplicable. No. CV 23-994, 2024 WL 1675036 (D. Del. Apr. 18, 2024). There, the claims were eligible because the purported solution relied on "a non-conventional configuration," namely, "the use of a remote server." *Id.* at *6. Plaintiff makes no attempt to argue the claimed COIN, vault, API, and connectors have any such "non-conventional configuration." Opp. at 12. In fact, they do not.

Plaintiff's attempts to distinguish Defendant's cases also fail. Regarding *Digitech Image Technologies LLC v. Electronics for Imaging, Inc.*, for example, Plaintiff alleges the server, vault, COIN, COIN API, and connectors are "additional limitations" beyond the DAG that save claim 1 from abstraction. Opp. at 13 (citing 758 F.3d 1344, 1349 (Fed Cir. 2014)). But these components— each generic, abstract, or both, *see* Op. Br. at 8-11—do nothing to render the claims non-abstract. Plaintiff contends *PersonalWeb Technologies LLC v. Google LLC* does not apply because the claimed "servers" and "COIN API" perform functions that "decidedly *could not* be carried out using a pencil and paper." Opp. at 12-13 (citing 8 F.4th 1310, 1313 (Fed. Cir. 2021)). But the claim in *PersonalWeb* was likewise deemed a "mental process[] that 'can be performed in the human mind,'" even though it recited "receiving [data] *at a first computer from a second computer*." 8 F.4th at 1313, 1316. And while Plaintiff suggests the claims here are not, as in *Alice Corp. Pty. v. CLS Bank International*, drawn "[o]n their face" to "a fundamental economic practice," the '805 Patent is expressly "directed [to] payment processing," something that surely is a fundamental economic practice. Opp. at 14 (quoting 573 U.S. 208, 219-20 (2014));

6

'805 Patent, 1:13-15. Regarding *Solutran, Inc. v. Elavon, Inc.*, Plaintiff argues "the claimed system provides," beyond efficiency, "reduced payment system complexity" that "transcends 'accounting issues'" due to "difficulties in connecting new digital channels" and "adapting to new digital payment experiences." Opp. at 15 (citing 931 F.3d 1161, 1164, 1166-67 (Fed. Cir. 2019). Similarly, Plaintiff distinguishes *Arunachalam v. Kronos Inc.* on the ground that the claims here "contain significant detail." Opp. at 15 (citing No. 14-CV-00091-RGA, 2021 WL 1174530, at *2 (D. Del. Mar. 29, 2021)). But Plaintiff points to nothing in the claims—let alone any "significant detail"—that recites *how* these "new digital channels" and "payment experiences" are addressed.

### c.   Defendant did not oversimply the claims.

Finally, Plaintiff contends that Defendant "oversimplifies the claims" and "fail[s] to account for [their] specific requirements[.]" Opp. at 11 (quoting *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020)). But there is nothing improper about recognizing that a claim reduces to a "mere[]" abstract idea. *Alice* itself reduced a 194-word claim to the abstract idea of "intermediated settlement." *Alice*, 573 U.S. 213 n.2. And the "specific requirements" Plaintiff identifies—the COIN, COIN API, connectors, and DAG—were all expressly addressed in Defendant's opening brief. *See* Op. Br. at 8-11, 15-17.

### 2.   *Alice* Step 2: The Claims Do Not Contain Any Inventive Concept That Transforms the Abstract Idea into Patent-Eligible Subject Matter.

Rather than disputing that any particular component of the claims is itself inventive (none is), Plaintiff alleges that certain inventive concepts lie in the "particular arrangement" of the components in the claims. Opp. at 16. But none of these allegedly inventive concepts is actually in the claims. For example, Plaintiff points to the specification to argue that "the claimed COIN 'uniquely has the content of 'both sides' of the transaction and can be defined to take workflow steps accordingly'"—yet the claim says only that the COIN "serves as an identifier that associates

7

a series of operations into a complete transaction." Opp. at 16-17; '805 Patent, 29:10-14. Plaintiff also highlights the specification's statements that the API "allows data transfer 'between multiple disparate payments systems without needing to understand the complexities of the differences in syntax, semantics, state or workflows that may exist between those systems'"—yet the claims recite only a single "source payment system" and a single "destination payment system," and make no mention of syntax, state, or workflow. Opp. at 17; '805 Patent, 29:19-24. Thus, "[t]he main problem that [Plaintiff] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way Media*, 874 F.3d at 1338.

For this reason, Plaintiff's reliance on both *CosmoKey Solutions GmbH & Co. KG v. Duo Securities* and *Cooperative Entertainment, Inc. v. Kollective Technology, Inc.* is flawed. Opp. at 16-17 (citing *CosmoKey*, 15 F.4th 1091 (Fed. Cir. 2021); *Cooperative*, 50 F.4th 127 (Fed. Cir. 2022)). In *Cooperative*, for example, the concepts alleged as inventive were actually claimed. *Cooperative*, 50 F.4th at 131 (tying the inventive concepts to the claim language). Likewise, in *CosmoKey*, the Federal Circuit pointed to specific claim limitations that embodied the alleged inventive concept. *CosmoKey*, 15 F.4th at 1098 (finding an inventive concept in "the last four claim steps"). In both cases, the Federal Circuit looked to the patent's specification and/or the patentee's complaint only to find they "plausibly tout[ed]" the concepts embodied in these limitations as "an improvement to content distribution systems." *Cooperative*, 50 F.4th at 131; *CosmoKey*, 15 F.4th at 1091 (similar). In contrast, Plaintiff does not, and cannot, point to any recitation in the claims limiting them to the inventive concepts it alleges.

Plaintiff's reliance on *BASCOM Global Internet Services v. AT&T Mobility LLC* is likewise inapt. 827 F.3d 1341 (Fed. Cir. 2016). The '805 Patent does not, as Plaintiff contends, "describe[]

8

how its particular arrangement of elements is a technical improvement." Opp. at 17 (quoting *BASCOM*, 827 F.3d at 1350). On the contrary, the components in claim 1—"servers," "a COIN application programming interface," "a source connector," and a "destination connector"—are arranged in the conventional way that servers, APIs, and connectors typically facilitate payments. Last, while Plaintiff points to "[t]he lack of preemption risk posed by the '805 Patent," Opp. at 17, the Federal Circuit has explained that "the absence of complete preemption does not demonstrate patentability." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018).

### 3. Resolution of the Claims' Eligibility at the Motion to Dismiss Stage Is Appropriate.

"Patent eligibility has in many cases been resolved on motions to dismiss[.]" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Plaintiff has not raised any claim construction issues, and "conclusory allegations" of the sort Plaintiff makes in its Amended Complaint do not preclude resolution now, as these "are insufficient to demonstrate an inventive concept." *Trinity*, 72 F.4th at 1365-66. And while Plaintiff requests, without justification, leave to amend its Complaint, Opp. at 20, no amendment can change that Plaintiff's *claims* are directed to an abstract idea and do not recite an inventive concept.

### B. Plaintiff Fails to Plead Sufficient Facts Under Counts II-V, 17 U.S.C. §§ 101 *et seq.*

A copyright is a bundle of exclusive rights, which includes *separate* rights to reproduce the copyrighted work (i.e., make copies), to prepare derivative works, and to distribute the copyrighted work to the public. 17 U.S.C. § 106. As noted by Plaintiff, the Copyright Act defines "an 'infringer' as '[a]nyone who violates ***any*** of the exclusive rights of the copyright owner.'" (D.I. 19 at 20) (citing 17 U.S.C. § 501). What Plaintiff fails to appreciate, however, is that violations of any of these exclusive rights provide *separate legal bases* of direct copyright infringement—and that these separate legal bases thus require separate factual support. *See* 17

9

U.S.C. § 501; 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.05[A] (2024) ( "*Nimmer*") ("An infringing act of reproduction constitutes an offense *separate and distinct* from any subsequent distribution of the offending product.") (emphasis added).

For each Asserted Copyright Registration, Plaintiff alleges that Defendant infringed Plaintiff's rights to prepare derivative works (D.I. 11 ¶¶ 73, 75, 81, 83, 89, 91, 97, 99) and to publicly distribute its copyrighted works (D.I. 11 ¶¶ 75, 83, 91, 99). But as Plaintiff itself asserts, "[Plaintiff's] copyright infringement claims (Counts II-V) do not state that [Defendant] prepared derivative works or publicly distributed its copyrighted works." (D.I. 19 at 20.) Plaintiff thus admits that it pled no facts to support these allegations. In doing so, Plaintiff has failed to show proof for "each theory of liability" of direct copyright infringement. *G.A.M.E. Apparel, LLC v. Prisco*, C.A. No. 12-1339, 2012 U.S. Dist. LEXIS 141564, at *8-9 (D.N.J. Oct. 1, 2012).

Because Plaintiff fails to plead *any* facts—much less "enough facts"—to support its allegations that Defendant infringed Plaintiff's rights to prepare derivative works and publicly distribute its copyrighted works, these claims constitute "mere conclusions" that should be dismissed.[2] *See Twombly*, 550 U.S. at 555, 570 (2007); *G.A.M.E. Apparel*, 2012 U.S. Dist. LEXIS 141564, at *8-9.

## III.   CONCLUSION

Plaintiff's patent infringement claims (Count I) and copyright infringement claims (Counts II–V) that Defendant infringed Plaintiff's right to prepare derivative works and right to publicly distribute its copyrighted works thus fail to state a claim for relief. For these reasons, Defendant requests that its motion to dismiss be granted without leave to amend.

---

[2] While Plaintiff's Motion does not seek to dismiss claims that Defendant violated Plaintiff's right of reproduction at this time, Defendant does not concede, in any way, that Defendant violated Plaintiff's right of reproduction.

|  |  |
|---|---|
| OF COUNSEL:<br>Frank Decosta<br>Timothy May<br>Gracie Mills<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER LLP<br>901 New York Avenue, NW<br>Washington, DC  20001-4413<br>(202) 408-4000 | */s/ Karen E. Keller*<br>Karen E. Keller (No. 4489)<br>Andrew E. Russell (No. 5382)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>arussell@shawkeller.com<br>*Attorneys for Defendant* |

Dated: October 31, 2024