**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MODOPAYMENTS, LLC,

Plaintiff,

v.

VOLVO FINANCIAL SERVICES LLC,
a division of VFS US LLC,

Defendant.

Civil Action No. 24-810-GBW

Robert M. Oakes, Grayson Sundermeir, FISH & RICHARDSON P.C., Wilmington, DE; Andria Rae Crisler, Riley J. Green, FISH & RICHARDSON P.C., Dallas, TX; Adam J. Kessel, FISH & RICHARDSON P.C., Boston, MA.

*Counsel for Plaintiff*

Karen E. Keller, Andrew E. Russell, SHAW KELLER LLP, Wilmington, DE; Frank Decosta, Timothy May, Gracie Mill, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP, Washington, DC.

*Counsel for Defendant*

**MEMORANDUM OPINION**

September 25, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant Volvo Financial Services LLC's ("Defendant") Motion to Partially Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), 35 U.S.C. § 101, and 17 U.S.C. §§ 101 *et seq.* ("Motion") (D.I. 16), which has been fully briefed (D.I. 17; D.I. 19; D.I. 20). For the reasons set forth below, the Court grants-in-part and denies-in-part Defendant's Motion.

## I. BACKGROUND

On July 12, 2024, Plaintiff ModoPayments, LLC ("Plaintiff") sued Defendant asserting infringement of one or more claims of U.S. Patent No. 11,216,805 (the "'805 Patent"). D.I. 1. Plaintiff amended its complaint ("Amended Complaint") on August 22, 2024, to add allegations of copyright infringement for Defendant's alleged unauthorized use of Plaintiff's software. D.I. 11. On September 19, 2024, Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the claims of the '805 Patent are directed to ineligible subject matter under 35 U.S.C. § 101 and that Plaintiff fails to sufficiently allege claims of direct copyright infringement. D.I. 17.

The '805 Patent is entitled "COIN Operated Digital Payments Hub" and is generally directed to a system and method for COIN-based payment event data management system. '805 Patent at Abstract. There are 8 claims in the '805 Patent. *Id.* at Claims. The Amended Complaint alleges that Defendant infringes "at least claim 1 of the '805 Patent, both literally and under the doctrine of equivalents." D.I. 19 ¶ 63. Claim 1 is an independent claim and recites:

> 1. A system for converting data related to payment events into payment status and notifications, the system comprising:
>
> one or more servers operable to receive data about a payment event including one or more of a participant identifying data, one or more

financial account numbers, one or more monetary amounts, and a status of the payment within one or more external accounts;

a vault comprising the one or more servers, the vault operable to store said data within a database comprising a predetermined structure comprising a COIN, wherein the COIN serves as an identifier that associates a series of operations into a complete transaction;

a COIN application programming interface operable to communicate with a payer and a payee related to a payment event;

a source connector comprising the one or more servers operable to communicate with a source payment system associated with the payer; and

a destination connector comprising the one or more servers operable to communicate with a destination payment system associated with the payee;

wherein the one or more servers are operable to:

> determine the number of accounting ledgers involved in the payment event, each accounting ledger associated with one of the one or more external accounts;
>
> create a COIN account within the COIN for each of the determined accounting ledgers;
>
> determine a flow path of funds amongst the determined accounting ledgers in order to complete the payment event, wherein the flow path comprises a directed acyclic graph (DAG), the DAG comprising a plurality of vertices and a plurality of edges, with each of the plurality of edges directed from one of the plurality of vertices to another, such that there is no way to start at a vertex and follow a consistently-directed sequence of the plurality of edges that eventually loops back to the vertex;
>
> access a proof COIN for transferring funds in the flow path, the proof COIN comprising a set of rules for transferring funds between a sender and a recipient;
>
> use the proof COIN to create the COIN;

> make ledger entries in the one or more COIN accounts from one or more monetary amounts in the data; and
>
> determine whether the one or more COIN accounts in the COIN balance using double entry accounting;
>
> maintain a COIN status to reflect a status of the one or more external accounts and each associated ledger entry;
>
> encrypt a portion of said data if the portion is determined to be sensitive;
>
> communicate at least a subset of the data to at least one of the one or more external accounts, the subset comprising instructions in native semantics to the at least one of the one or more external accounts, the instructions created by the source connector from the set of rules;
>
> monitor an updated status of the payment in the one or more external accounts; and
>
> initiate notifications to the one or more external accounts based on the COIN status.

'805 Patent at Claim 1.

## II. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(6)

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

**B. Patent Eligible Subject Matter**

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l* ("*Alice*"), 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted) . "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* at 217 (cleaned up). "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection." *Id.* (internal citation omitted). "The latter

pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.*

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Alice*, 573 U.S. at 217. In other words, the inquiry is whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Id.* If "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). To avoid invalidity, the additional features "cannot simply be well-understood, routine, conventional activities previously known to the industry. *Id.* Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "Contesting patent eligibility under § 101 is an affirmative defense of invalidity, and the burden of proving invalidity falls squarely on . . . the movant." *Aon Re, Inc. v. Zesty.AI, Inc.*, 791 F. Supp. 3d 531, 537 (D. Del. 2025) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015)); 35 U.S.C. § 282(a)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). The Federal Circuit "ha[s] repeatedly recognized, 'it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.'" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289-90 (Fed. Cir. 2024) (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)). "If patent eligibility is challenged in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we must apply the well-settled Rule 12(b)(6) standard which is consistently applied in every area of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) ("*Aatrix I*"). "[P]atent eligibility [under § 101] can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (some alterations in original) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("*Aatrix II*")). This is,

however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix II*, 882 F.3d at 1128.

## III. DISCUSSION

### A. The Court Grants Defendant's Motion as to the '805 Patent

#### 1. At *Alice* Step One, the '805 Patent is Directed to an Abstract Idea

Defendant contends that the claims of the '805 Patent are specifically directed to "processing accounting data related to payment events." D.I. 17 at 7. According to Defendant, claim 1 "involves nothing more than receiving and manipulating data" and the "COIN-related steps" do not save it from abstraction. *Id.* at 8. Plaintiff disagrees and asserts that the '805 Patent discloses "specific improvements to payment processing technology that reduce[s] complexity and increase[s] efficiency and security." D.I. 19 at 8. According to Plaintiff, the claims are directed to "facilitating secure and efficient payment flows between multiple disparate payment systems without needing to understand the complexities of the differences in syntax, semantics, states or workflows that may exist between those systems," which is a "technological solution" for the technical problem of "increasing participants and complexit[ies] in the payments industry . . . and rais[ing] security challenges." *Id.*

At *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F. 3d 1253, 1257 (Fed. Cir. 2016) ("The abstract idea step of the inquiry calls upon us to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter."). "In addition to the claim language, [the Court] may also examine the patent's specification to determine the meaning of the claims as a whole." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F. 4th 1359, 1367 (Fed. Cir. 2024).

The '805 Patent is generally directed to "[a] system and method . . . for a COIN-based payment event data management system." '805 Patent at Abstract. "The COIN can provide a consolidated source of accounting for all parties to a transaction by providing for multi-directional translation, resolution, accounting and other functions." *Id.* The '805 Patent explains that in almost "every payment transaction between a payor and a recipient there can be multiple entities or companies involved in a single purchase." *Id.* at 1:22-24. Additionally, "each company may have different accounting systems, techniques, and protocols." *Id.* at 1:24-26. Therefore, it can be difficult to "ensur[e] that each party is correctly paid or made whole in a timely manner" and "track from an accounting perspective." *Id.* at 1:27-31. As complexities increase across the payments industry, the opportunity for fraud or theft increase, more mistakes occur, "companies see more actuarial complexity, tracking becomes costly for all parties, and consumer choice and convenience are derailed." *Id.* at 2:50-56. The '805 Patent claims to solve these issues in electronic payment systems through the use of "a platform, referred to as a COIN payment event data hub," which securely facilitates connections between payment systems and new digital experiences. *Id.* at 6:4-7.

In determining whether claims are directed to ineligible subject matter under § 101, courts have found it helpful "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). In asserting that the claims of the '805 Patent are directed to an abstract idea, Defendant likens claim 1 of the '805 Patent to the claims at issue in *Alice* and *Solutran, Inc. v. Elavon, Inc.* ("*Solutran*"), 931 F.3d 1161 (Fed. Cir. 2019). D.I. 23. In *Alice*, the claims involved "facilitat[ing] the exchange of financial obligations between two parties by using a computer system as a third-party intermediary." *Alice*, 573 U.S. at 213. The computer system "exchang[ed] financial

obligations between two parties" by creating "account ledgers" that "mirror[ed] the balances in the parties' real-world accounts" at "banks," then "update[d]" these ledgers "in real time as transactions are entered." *Id.* At step one, the Supreme Court held that the claims were directed to the abstract idea of "intermediated settlement," explaining that the claims recited "a method of exchanging financial obligations between two parties" by "creat[ing] and updat[ing] . . . records to reflect the value of each party's actual accounts." *Id.* at 219-220. The Supreme Court reasoned that intermediated settlement was "a fundamental economic practice long prevalent in our system of commerce" and therefore an abstract idea. *Id.* at 220-221. Although the claims recited a computer implementation, the Supreme Court explained that the computer components merely performed conventional functions such as creating and maintaining account records, obtaining data, adjusting account balances, and issuing instructions. *Id.* at 224-226.

The Federal Circuit reached a similar conclusion in *Solutran*. The Federal Circuit held that the claims were directed to the abstract idea of "crediting a merchant's account as early as possible while electronically processing a check." *Solutran, Inc.*, 931 F.3d at 1166. The claims recited basic steps of electronic check processing. *Id.* Specifically, the claims recited a method for electronic check processing that involved, among other things, receiving purchase data at a point of sale and comparing that information to the paper check to confirm the accuracy of the transaction, and crediting the merchant's account while the check was processing. *Id.* at 1166-67. The Federal Circuit held that crediting a merchant's account was a long-standing commercial practice, and therefore the claims were directed to an abstract idea. *Id.*

Plaintiff responds that the claims of the '805 Patent recite specific improvements to payment processing technology that reduce complexity and increase efficiency and security. D.I. 19 at 8. In Plaintiff's view, Defendant oversimplifies the claims and fails to account for the specific

requirements of the claims. Plaintiff contends that, unlike *Alice*, the claims of the '805 Patent are not directed to a fundamental economic practice. *Id.* at 14. Rather, the claims "are directed to specific and detailed implementation of electronic payment processing – not merely the concept of processing payments or performing accounting electronically." *Id.* Plaintiff further contends that, although the '805 Patent describes the use of a computer, it is distinguishable from *Alice* because the claimed method in *Alice* merely instructed the use of a generic computer to perform generic functions. *Id.* Plaintiff asserts that *Solutran* is also distinguishable because, unlike the claims at issue there, the claimed system of the '805 Patent provides "not only faster and more efficient processing," but also enhanced security in fund transfers and reduced complexity in the payment system. D.I. 19 at 15. Moreover, Plaintiff likens the claims of the '805 Patent to *DDR Holdings, LLC v. Hotels.com. L.P.*, 773 F. 3d 1245 (Fed. Cir. 2014) and *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F. 3d 1343 (Fed. Cir. 2018), where the Federal Circuit found that the claims at issue were specific improvements of computer implemented functionalities. D.I. 24.

In *DDR Holdings*, the Federal Circuit's discussion of the patent at issue in that case centered around the *Alice* step two analysis as opposed to an *Alice* step one analysis. 773 F. 3d at 1257 ) ("[A]s discussed below, under any of these characterizations of the abstract idea, the '399 patent's claims satisfy *Mayo/Alice* step two.")

In *Ancora Techs.*, the Federal Circuit held that the claims were not directed to an abstract idea, but rather "to a solution to a computer-functionality problem: an improvement in computer functionality . . . ." 908 F.3d at 1349. The Federal Circuit held that the claimed computer architecture, storing a software license "in a particular, modifiable, non-volatile portion of the computer's BIOS," which was a departure from prior methods, improved the functionality of computers by making the installed software less susceptible to hacking. *Id.* at 1348-49.

In the instant action, Claim 1 of the '805 Patent concerns the processing of information associated with financial transactions. '805 Patent at Claim 1. The claimed system receives payment event data, including participant information, financial account numbers, monetary amounts, and payment status (*id.* at 3:19-24); stores that information in a database using a COIN as an identifier for the operations comprising the transaction (*id.* at 3:24-26); communicates with the payer, payee, source payment system and destination payment system (*id.* at 3:26-31); determines the accounting ledgers involved in the payment (*id.* at 3:31-34); creates corresponding COIN accounts and ledger entries within those accounts (*id.* at 3:34-36); determines a path for the flow of funds among those accounts (*id.* at Claim 1); applies rules governing the transfer of funds (*id.*); records the transaction using double-entry accounting (*id.* at 3:36-38); monitors the status of the external accounts and generates notifications based on that status (*id.* at 3:38-46).

Viewed as a whole, the Court finds that Claim 1 of the '805 Patent is directed to the abstract idea of managing, coordinating, and reconciling a financial transaction among multiple accounts and payment systems. Like the claims in *Alice*, Claim 1 of the '805 Patent uses a computer based intermediary to coordinate transactions between financial participants and external financial systems. The claimed system receives and organizes information concerning a financial transaction, determines the accounts and ledgers involved, directs the flow of funds among those accounts, records the results, and monitors and communicates the transaction's status. '805 Patent at Claim 1. These limitations are functions by which the claimed system manages the underlying financial transaction, rather than improvements to the operation of the computer technology itself. Like the claims in *Solutran*, Claim 1 of the '805 Patent recites a specific series of computer-implemented steps for processing a financial transaction. Although those limitations prescribe a particular manner of carrying out the transaction, the limitations do not alter the character of the

claimed activity to which the claim is directed. Plaintiff identifies asserted benefits of reduced complexity, increased efficiency, and enhanced security, but the claim does not recite those asserted benefits as an improvement to computer functionality. Instead, the claimed limitations implement those benefits by managing the financial transaction. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

Thus, like the claims in *Alice* and *Solutran*, Claim 1 of the '805 Patent is directed to the abstract idea of managing and coordinating the movement and accounting of funds among financial accounts and payment systems. This is a fundamental economic practice long prevalent in our system of commerce. The Court also finds that the dependent claims are directed to the same abstract idea. The dependent claims describe aspects of the system and process, such as "the COIN status" (claims 2, 8); the "portion comprises . . . financial account number") (claim 3); participant data comprises an email address (claim 4) or an identification number (claim 5); financial account numbers comprises "a participant's bank account number" (claim 6) or "credit card account number" (claim 7). None of the claims add technical features that improve computer functionality. As a result, the dependent claims, like the independent claim, are directed to the abstract idea of managing and coordinating the movement and accounting of funds among financial accounts and payment systems.

### 2. At *Alice* Step Two, the '805 Patent Lacks an Inventive Concept

As stated *supra* Section (III)(A)(1), the Court holds that the claims of the '805 Patent are directed to the abstract idea of managing and coordinating the movement and accounting of funds among financial accounts and payment systems. That, however, does not end the Court's inquiry. *See Alice*, 573 U.S. at 221. At *Alice* step two, the Court must consider "the elements of the claim," both individually and as an ordered combination, to determine if there is an "'inventive concept'

sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72-73).

Plaintiff contends that the claims supply an inventive concept because the particular arrangement of the claimed system overcomes challenges in prior art payment systems. D.I. 19 at 17. Specifically, Plaintiff asserts that the claimed COIN "uniquely has the context of both sides of the transaction and can be defined to take workflow steps accordingly," the API "allows data transfer between multiple disparate payment systems without needing to understand the complexities of differences in syntax, semantics, state or workflows that may exist between those systems," the vault "allows this payment flow to proceed securely," and the claimed connectors "can translate payment instructions and the state of payment instructions from disparate external payment systems." *Id.* at 16-17.

Defendant disagrees, arguing that the inventive features identified by Plaintiff are not recited in the claims. D.I. 20 at 7-8. Defendant further contends that the components in claim 1, including "one or more servers," "a vault comprising the one or more servers," "a COIN application programming interface," "a source connector," and a "destination connector," are generic functional components described only by the functions they perform, with no indication that any component itself is inventive. D.I. 17 at 15.

The Court finds that Plaintiff has not identified an inventive concept. Plaintiff does not contend that any individual component recited in Claim 1 is unconventional. *See* D.I. 19 (making no such assertion). Instead, Plaintiff contends that the particular arrangement of the claim elements provides "a technical improvement over conventional payment systems" by "reducing technical and operational complexity, data loss, and risk of fraud, theft, or mistake while increasing efficiency and security." *Id.* at 16. However, that bare contention alone does not supply an

inventive concept. The problems that Plaintiff identifies, and the claimed solutions to those problems, amount to little more than applying the abstract idea identified at step one. Plaintiff does not contend that it invented the underlying financial practices of Claim 1. Nor does Plaintiff contend that it invented the use of computer systems to communicate payment information between financial institutions. Rather, Claim 1 applies a computer-implemented architecture, including a COIN, database, API, and payment-system connectors, to the management and coordination of a financial transaction. The use of COIN and the other computer components to perform the underlying financial practices is conventional and does not supply an inventive concept. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014) (an abstract idea does not become patent-eligible when "the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity," such as through a "general purpose computer"). Moreover, these activities are part of the abstract idea identified *supra* Section (III)(A)(1) and therefore cannot themselves provide an inventive concept at *Alice* step two. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance.").

Further, the recitation of COIN or DAG does not supply an inventive concept. Claim 1 does not recite any unconventional structure or operation of the COIN or DAG that improves the functionality of the computer system. *See Hyper Search LLC v. Facebook, Inc.*, No. 17-1387, 2018 WL 6617143 ("[G]eneric descriptions of computer components and functions do not rise to the level of inventive concept" (cleaned up)). Instead, COIN and DAG are used to organize, determine, and execute the flow of financial information and funds, which are functions that are part of the claimed system and process. The use of a particular software component or data structure to implement an abstract idea does not transform that practice into a patent-eligible

invention. *See id.* Although Plaintiff characterizes these limitations as "innovative management of payment data using technological solutions," D.I. 11 ¶ 34, the relevant question is whether the claimed arrangement improves the functionality of the computer or another technology, not whether the claimed system uses technology to improve the manner in which an underlying financial activity is performed. *See Enfish*, 822 F.3d at 1339 ("[A]nalysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two" of *Alice*). Plaintiff identifies no improvement to the operation of the claimed computer components. Plaintiff's alleged reductions in complexity, data loss, fraud, theft and error concern the manner in which financial transactions are managed.

Plaintiff cites to *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) for the contention that an ordered combination of claim elements can provide an inventive concept. D.I. 19 at 17. In *Bascom*, the Federal Circuit considered claims "directed to filtering content on the Internet." 827 F.3d at 1348. Although the limitations, "taken individually, recite generic computer, network and Internet components, none of which [were] inventive by itself," the Federal Circuit found that the claims as a whole specified a particular arrangement that "carve[d] out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts." *Id.* at 1349, 1352. This arrangement was unconventional because it provided "both the benefits of a filter on a local computer and the benefits of a filter on the ISP server." *Id.* at 1350. In contrast, Claim 1 of the '805 Patent contains no comparable arrangement. Unlike the claims in *Bascom*, which recited a specific configuration of conventional elements that provided a technical improvement to the computer network, Claim 1 does not recite an unconventional arrangement or specific configuration that improves the operation of its constituent computer

components. Nor does Plaintiff identify anything about the ordered combination that alters that conclusion. Claim 1 does not require the recited components to perform a new computer function, nor does it specify a particular architecture that improves the computer system. In fact, the components interact in the expected manner: the system receives and communicates payment information, stores information in the vault, uses the API to facilitate communication between systems, and uses connectors to translate and transmit payment instructions. *See* '805 Patent at Claim 1. The ordered combination therefore does not add anything beyond the conventional computer implementation of the underlying financial transaction. The database, API, servers, COIN accounts, and payment-system connectors perform their conventional functions of storing, communicating, organizing, and processing financial information. Thus, their ordered combination does not supply an inventive concept distinct from the abstract financial activity that the components facilitate. Rather, their ordered combination merely implements the abstract idea of managing and coordinating financial transactions using conventional computer technology.

Plaintiff's allegations in its Amended Complaint do not alter that conclusion. Plaintiff alleges that "[t]he 805 Patent's claims are not well-understood, routine or conventional, and they provide a technical solution to a technological problem." D.I. 11 ¶ 34. Plaintiff further alleges that the "COIN application programing interface to connect a payer and payee" and the "directed acyclic graph ('DAG') that determine the flow path of funds" in Claim 1 constitute "innovative management of payment data using technological solutions." *Id.* Plaintiff contends that these allegations, accepted as true, are sufficient to survive a motion to dismiss because they identify specific technological improvements. D.I. 19 at 18. The pleading standard does not permit Plaintiff to rely on conclusory assertions. "[P]lausible factual allegations of an inventive concept can defeat a motion to dismiss," but "a plaintiff cannot defeat a motion to dismiss merely by

including conclusory allegations of inventiveness." *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. 22-1273, 2023 WL 1927393, at *14 (D. Del. Feb. 10, 2023), *aff'd*, No. 2023-1578, 2024 WL 4717268 (Fed. Cir. Nov. 8, 2024). Plaintiff describes the COIN ad DAG as "innovative," D.I. 11 ¶ 34, but those allegations merely identify and characterize the claimed components; they do not allege facts describing what is unconventional about the COIN and DAG. Plaintiff likewise does not allege the specific manner in which those components improve the operation of a computer. Thus, even accepting Plaintiff's allegations as true, the allegations establish only that Claim 1 uses the recited computer components to perform the claimed invention and not that those components or their arrangement rise to the level of an inventive concept.

Plaintiff's assertion that the claims provide a "technical solution to a technological problem," D.I. 11 ¶ 34, fares no better. That characterization does not transform an abstract financial practice into a patent-eligible invention. Plaintiff identifies no specific technological improvement attributable to the COIN, DAG or any other limitation of Claim 1. Instead, Plaintiff alleges in a conclusory manner purported improvements to the financial transaction process itself, such as reducing complexity, data loss, fraud, theft, and error. Those conclusory alleged benefits do not establish that Claim 1 improves the operation of a computer. Thus, considering the claim elements individually and as an ordered combination, Claim 1 contains no inventive concept sufficient to transform the abstract idea into a patent-eligible application.

For the foregoing reasons, the Court grants Defendant's Motion as to the '805 Patent.

**B. Plaintiff Sufficiently Pleads Copyright Infringement**

Defendant also seeks dismissal of Plaintiff's four counts of copyright infringement. Specifically, Defendant contends that Plaintiff's Amended Complaint fails to plead facts that Defendant created derivative works based on Plaintiff's copyrighted works and distributed Plaintiff's copyrighted works to the public. D.I. 17 at 18-20. To state a claim of copyright

infringement, a complaint has to assert two essential elements – "ownership of copyright, and copying by the defendant." *Dam Things from Denmark v. Russ Berrie & Co. Inc.*, 290 F. 3d 548, 561 (3d Cir. 2002). In its Amended Complaint, Plaintiff alleges that it owns valid and registered copyrights for U.S. Copyright Registration Nos. TX 0-415-681, TX 9-415-677, TX 9-415-616, and TX 9-415-659. D.I. 11 ¶¶ 70, 78, 86, 94. Thus, Plaintiff meets the first element of a copyright infringement claim. *See Dam Things from Denmark*, 290 F. 3d at 561.

As for the second element, Defendant claims that "Plaintiff fails to allege any facts that Defendant created works based on Plaintiff's copyrighted works or modified Plaintiff's copyrighted works so as to 'recast,' 'transform[],' or 'adapt[]' them." D.I. 17 at 19. Defendant also claims that Plaintiff fails to allege any facts that "Defendant disseminated Plaintiff's copyrighted works to the public or offered to do so." *Id.* Plaintiff responds that Defendant asks the Court to make an advisory ruling on narrow aspects of Plaintiff's copyright infringement claims. D.I. 19 at 19. Plaintiff asserts that it sufficiently pleads a claim for copyright infringement because it alleges that (1) it is the sole owner of valid, registered copyrights and (2) Defendant engaged in unauthorized copying. *Id.*

"To satisfy [the] second element, the plaintiff must supply plausible allegations of fact 'showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities' between the original work and the one purportedly produced via plagiarism." *Frazier v. City of Philadelphia*, 778 F. App'x 156, 159 (3d Cir. 2019) (quoting *Dam Things from Denmark*, 290 F. 3d at 561). The Amended Complaint alleges that, on September 19, 2019, Plaintiff and Defendant executed a Master License and Services Agreement ("Agreement") for the use of /Checkout, "a cloud-based payment orchestration solution that manages payment data through the full lifecycle of the payment." D.I. 11 ¶¶ 37-38. The Agreement was terminated

on or around October 2022. *Id.* ¶ 50. The Amended Complaint further alleges that, between October 2022 and July 2023, Defendant had access to the source code for /Checkout and unlicensed copies were created whenever Defendant accessed the copyrighted source code by "running it implementation of /Checkout, copying the associated files onto [Defendant]-related computers or by opening these files via code editing software." *Id.* ¶¶ 71-72, 79-80, 87-88, 95-96. Therefore, according to the Amended Complaint, Defendant's infringement related to the copyrighted source code "includes at least direct infringement of [Plaintiff's] exclusive right to reproduce its copyrighted works." *Id.* ¶¶ 73, 81, 89, 97.

The Court finds that Plaintiff sufficiently pleads the second element. In particular, the Amended Complaint alleges that Defendant reproduced and used Plaintiff's copyrighted source code related to /Checkout between October 2022 to July 2023, which is after the termination of the license agreement. *See* 17 U.S.C. § 106(1) (stating that it is an infringing act to "reproduce the copyrighted work in copies"). These allegations, together with the Amended Complaint's allegations that Plaintiff is the sole and exclusive owner of the copyrighted work, are sufficient to state a claim for direct copyright infringement. *See Michael Grecco Prods., Inc v. GlowImages, Inc.*, No. 18-902, 2020 WL 1866172, at *2 (D. Del. Apr. 6, 2020); *see also Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 135-36 (3d Cir. 2014) ("Because the use of computer software typically involves the reproduction of computer code by the user's machine, an owner adequately alleges copying when he asserts facts from which it would be plausible to conclude that a licensee continued to use copyrighted software after the license expired.").

For the foregoing reasons, the Court denies Defendant's Motion as to the four counts of copyright infringement.

## IV. CONCLUSION

For reasons set forth above, Defendant Volvo Financial Services LLC's Motion to Partially Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), 35 U.S.C. § 101, and 17 U.S.C. §§ 101 *et seq.* ("Motion") (D.I. 16) is granted-in-part and denied-in-part.

The Court will issue an Order consistent with this Memorandum Opinion.